First case for argument this morning is 14-7012 or D.S. v. McDonald, Ms. Lavowski. May it please the court, my name is Mary Lavowski and I represent Mr. Ordillas in this matter. In this case, your honors, the board's interpretation cannot stand. DC-8100 requires prostrating headaches for a 30% rating and completely prostrating for a 50% rating. The board interpreted prostrating to mean utter physical exhaustion, helplessness, powerlessness. But if prostrating means utter physical exhaustion, what does completely prostrating mean? What can be more severe than utter physical exhaustion or helplessness? Indeed, no one, not even the secretary, has under the board's definition of prostrating. In addition, the board's interpretation is not most favorable to veterans. So what's your definition of prostrating? Our definition would be migraines with sensitivity to stimulus, nausea, and vomiting. Where does that come from? It comes from an understanding of both the text of the regulation and also an understanding of the disease condition itself. So the regulation contemplates... What's the source of your definition? Did you just craft it yourself? Is that the idea? Well, based on an understanding of the disease through a review of different people who have this condition. So the regulation contemplates different degrees of severity, prostrating and completely prostrating. Migraine symptoms vary. So some people can have nausea, vomiting. Other people have sensitivity to light, to sound. Some people are completely taken out by the condition and can't work for days. So Mr. Ordeas has just tried to provide an example of an interpretation that gives meaning to all the words of the text, is more favorable to veterans, and is reasonable. The board also interpreted productive of severe economic inadaptability, but this too cannot stand. It is also inconsistent with the regulations and not most favorable to veterans. The board interpreted productive of severe economic inadaptability to be an inability to work, but this conflicts with the regulation itself that states that the migraines need only be productive of severe economic inadaptability. I don't understand the difference. Productive means that they produce? Do we all agree with that? I respectfully disagree. Productive tends to mean the power to produce. The secretary has previously conceded in a different proceeding that it can be interpreted both as producing, but also as capable of producing. So you say, but you pick one. You don't say it means producing. You mean capable of producing only? Well, in Mr. Ordeas' proposed definition, which again is just an exemplary definition, we would say that migraines are capable of, or do in fact, interfere with a veteran's ability to earn a living, although she or he can retain employment and earn income above the poverty threshold. But again, that seems as though you're just saying that you've studied it and you think that's what the definition ought to be, rather than finding that definition in some relevant source, right? Well, so we do have the secretary's concession that the term productive of can be capable of producing. In addition, the CABC has determined that one would be entitled to 100% disability rating if the veteran is unable to maintain employment above the poverty threshold. So we are combining these to try to give guidance to what productive of severe economic inadaptability can be. The secretary has argued that the board's interpretation is entitled to deference, but they are not. First, there is no agency interpretation in this case. Here we have no opinion from the general counsel. We only have the interpretation of one board member, which was implicitly adopted by one judge of the veteran's court. In addition, even under our, there is no deference given if the interpretation is inconsistent with the regulation as it is here. The secretary has also argued that Mr. Ordea's is really challenging the facts of this case. This again is incorrect. One can't argue the facts of the case until DC 8100 has been properly interpreted. Given the clear conflicts with the regulation, the board's interpretations must be overturned. I'd be happy to answer any additional questions. May I please the court? The court should affirm the decision of the veteran's court because the veteran's court did not err in interpreting 38 CFR section 44.124A and evaluating Mr. Ordea's claim for disability compensation. Based on the board's definition of prostate rating, what would be your definition of completely prostate? I think that a completely prostate rating attack would be the most severe version. However, I don't think that appellant is right to focus on a single word within the rating definition. The government's position is that the entire rating definition has to be used to evaluate the attacks. A 30% or 10% rating requires prostate rating attacks with a frequency component. They can be less frequent. A 50% rating only comes into play... If we're just looking, forget the frequency part of the listing. Just look at the use of prostrating for 50%, for 30%, and then for 10%. So I'm just trying to put your definition in it. So for 30% it would be, what is your definition, utter... What the board did and what the sub-secretary defended below and we continue to defend is to rely on dictionary definitions for that otherwise undefined term. So it would mean extreme exhaustion, also meaning powerlessness or helplessness, and completely would be the most severe version of that. But you've left out the word utter, which is, as far as I can tell, the linchpin of the other side's position. That if you use the word utter for the definition of prostrating, you can't get more utter than utter. I think that's a fair point. However, the board relied on two dictionary definitions, including a medical dictionary, which defined prostrating as extreme exhaustion or powerlessness. And again, the entire rating scale within Diagnostic Code 8100 represents a gradation of the severity of the veteran's disease. And the way that the VA has written the substance of Diagnostic Code 8100 ratings, which of course cannot be reviewed by the court, is to create ratings that increase in percentage as the severity, but also frequency of the tax occur. But we're not talking about the frequency part. I understand, I appreciate the frequency part, but we're just talking about the prostrating part. And even if you walk away from the definition that includes the word utter, I think what you just told us was, okay, let's not do utter, let's talk about extreme exhaustion, or is that what you use, extreme exhaustion, and what was the other definition you were giving us? The two definitions that the board relied on were utter physical exhaustion or helplessness, or extreme exhaustion or powerlessness. But again, the entire attack... What page in the board's decision does that have? In the record, that's on page 209. Again, the word attack is being modified, which in the 50% rating requires completely prostrating and prolonged attacks, whereas a 30% or 10% rating only requires a prostrating attack. But completely is modifying prostrating. It doesn't make any sense. You're not saying that completely is modifying prolonged attacks. That doesn't make any sense to me. It's a fair point, Your Honor, but I think that as the entire rating system is designed to reflect an increase in the severity of attacks, a 50% rating is designed in terms of severity to capture the most severe attacks, along with those more frequent attacks. Someone could have a very severe attack, a completely prostrating attack once in a year. They would not be eligible for a 50% rating because the entire rating definition must be read in... Would they be subject to a 30%? No, because the 30% of the time is average of once a month. That's right. The entire thing needs to be read together because for the migraine component, and again here we're talking about a veteran who is generally able to continue working through his headaches, which is to be commended, but he does not lose more than 8 to 10 hours a month or one day in 20 as a result of his headaches. With that set up, the Veterans Court was affecting both the frequency and the severity. They did find that his inpatient medical, his emergency room visit constituted a prostrating attack, but that was the only attack that the board and then the Veterans Court found to be a prostrating attack. Do I remember right, the Veterans Court itself did not say what definition it was using, right? That's correct. It affirms the board and the secretary... And the board cited two definitions which have different wording, one of which has the word utter, the other doesn't. The one without the word utter is plainly susceptible of gradations and the insusceptibility of gradations is, I think, the core of Mr. Ardeaz's challenge. Do you think that we should interpret, essentially, the choice of two definitions, basically, to come to rest on the one that is amenable to gradations with the word utter perhaps something of an outlier? Yes, Your Honor. I do believe it would be appropriate in this instance to use an interpretation that's susceptible to gradation. I do want to also respond to Mr. Ardeaz's contention that the court should rely on the interpretive doubt doctrine in resolving this case. We do not believe that's the case. The way that interpretive doubt comes into play only after Chevron deference and our deference has been exhausted. And here, what the veterans court did and what the secretary defended was what this court has said is proper in cases like Nilsen to give terms to their ordinary meeting by consulting dictionary. Where, if anywhere, did the board adopt a definition of productive of economics in adaptability, I suppose? I don't believe that the board did adopt a definition of productive of economic adaptability. I believe what the board did was to evaluate whether the facts of Mr. Ardeaz's case fit the criteria of 50. And the case that Mr. Ardeaz's counsel pointed the court to principally from the veterans court, the concern there was that the veterans court... I'm going to ask about a much more mundane question. Is there something in the board or the veterans court decision that says what we mean by this diagnostic code phrase is inability to work? No, absolutely not. And the veterans court has said that you cannot give productive of severe economic in adaptability that meaning. And the court, the veterans court, neither the veterans court nor the board did that here. Again, the concern in Prince, or excuse me, Pierce v. Principi was that the board had not evaluated the veterans claim. Here, the board did look at the 50% rating and said, we do not find that there is merit for a 50% rating here because the veteran is generally able to work through his headaches and he loses, on average, only one day out of 20 in a month. We've been talking about interpretations of the regulations and there's a certain abstract quality to that. What difference does it make in this case whether the regulation has not been clearly interpreted as the difference between completely and prostrating and prostrating or between the various definitions of inability to work? What difference would it make in this case? It wouldn't make any, Your Honor, and the reason for that is because no matter how prostrating is defined, Mr. Ordea simply cannot meet the frequency requirements of a 50% rating, which require very frequent attacks and attacks that are productive of severe economic in adaptability. Is that what the board said? Is that what the board said? The board did say that he did not meet the criteria of a 50% rating because he had minimal lost time from work, one day out of 20, and because he was generally able to continue working through his headaches. I thought there were two issues. One, does he get 50% after January 2011 and does he get 30% rather than 10% before? Put aside the 50%. 30% doesn't require this economic in adaptability business, so doesn't whether you go from 10% to 30% depend on what prostrating means? Because if it means something relatively on a lighter end of the scale, maybe he had lots of those. Again, however, the regulations must be interpreted in connection with the VA's requirement to have a schedule of ratings that face the ratings as far as practicable on the average impairment of the earning capacity resulting from such injuries in civil occupation. That's, of course, in 38 U.S.C. 1155. What the evidence showed prior to the January 2011 attack was that although there was an increase in the severity, the record didn't support a rating in excess of 10% prior to that time, which does require prostrating attacks occurring on average once a month. I guess I just want to focus on this one point. Suppose prostrating attacks is something that you can have and still go to work, but suppose that. Then maybe he had lots of those, way more than, what is it, once a month. Doesn't it completely depend, that is, how many are in the basket, doesn't that completely depend on the definition of prostrating? I do think it depends on the definition of prostrating. However, prostrating should be given its common meaning, as this court has recognized in Nielsen. That would require a form of extreme exhaustion and powerlessness. A veteran may have an attack that requires some lost time from work, but perhaps not an entire day for that portion that he's lost. Perhaps that could be considered a partially prostrating attack. However, again, what the VA did here was to give the word prostrating its ordinary meaning, and I think that it was the proper thing to do. What was the veteran's argument as to why he was entitled to the higher rating? My understanding, and Mr. Ordeas' counsel can correct me if I'm wrong, is that he believes his January 2011 emergency room visit to be a completely prostrating attack, and I think that there's some ignoring of the frequency requirement, but I think there's an attempt to argue that a completely prostrating attack would qualify the veteran for 50%. But even under that theory, it wouldn't meet the frequency requirement. The government absolutely agrees with Your Honor, that there's a real problem here with the frequency component that this veteran simply cannot meet. If the court has no further questions, we ask that the veteran's court decision be affirmed on the basis of our arguments here today and in our brief. Thank you. Thank you. Thank you, Your Honor. I'd like to just address two points really quickly. The first is that the Secretary has suggested that perhaps extreme exhaustion might be a possible interpretation of completely prostrating. The first point is that we're still not defining completely prostrating. The VA has not issued any interpretation in this case, and therefore, any new definition is not the agency's fair. What about their point about not meeting the frequency requirements, regardless of whether it was prostrating or completely prostrating? That gets to the facts of the case, and that's not before the issue of the court. I think the problem is that it does depend on the definition of prostrating and the definition of completely prostrating, and we have argued below to the veteran's court that we do, under reasonable interpretations, meet the factual requirements. But they determined that you didn't, and they relied on the frequency requirements. I mean, we don't sit here to decide abstract questions that don't have an effect on the case. If they've made a factual finding which precludes you, then it would seem as though we don't have any business deciding a legal question which couldn't affect the result. Well, I believe it could. If we overturn the definition of prostrating, then we need to go back to the record and determine what is prostrating and how many of those attacks are there. The same with completely prostrating. Did the veteran argue below that under the correct definition of prostrating, you have a sufficient number of attacks? Yes. Mr. Ordeas is not arguing for 50% just because. Mr. Ordeas' headaches have grown in severity, and so Mr. Ordeas would like the 30% rating from 2011 on to be 50% based on the fact of the record. Where in the record was that argument made, that under the correct definition of completely prostrating, he's satisfied? That is in the brief that Mr. Ordeas submitted to the… Is that in the joint appendix? Only partially. I apologize. This part or not? The relevant part is in the joint appendix? The part that's in the joint appendix just indicates that Mr. Ordeas proposed alternative definitions, not the facts. And what about the final problem, not the frequency, but the economic… Productive severity. Productive severity. What evidence did he show of any? You're saying their definition is too severe, too stringent. What was your definition? It was capable of, right? Capable of or due in fact. And so did he show in fact any economic severity? And I'm a little unclear on how you would show capable of economic severity. So this is, again, very fact dependent, but in this specific case, Mr. Ordeas did testify that he lost 8 to 10 hours of work. The board, despite… During what period? The latter period. A month? Per month? Yes. In that timeframe from 2011 forward. So we have 8 to 10 hours. This is not insignificant depending on the occupation or, you know, as someone part-time. Even 8 to 10 hours if we assume that's one day per month. Well, one day per month is 12 days per year. This is two weeks' loss of work simply because of his migraine. So this is not insignificant. Again, this is getting to the facts of the case and we're certainly not raising that. This is not before the court. But it highlights the issues that… But that frequency corresponds to the 30% rating, right? There's a frequency element of both the 30% and the 50%. The other point where extreme exhaustion, a new definition, would be a problem is that it still does not leave much room for… If we decide that completely prostrating means extreme exhaustion, we have the conflict with the total disability rating. Well, it can get worse than extreme exhaustion, right? You mentioned earlier, even under your definition, there was nausea, there were other components of having a migraine that are outside of just the exhaustion component, right? Yes, so Mr. Odias is not using exhaustion within his terms. So perhaps my definition of understanding of what the government meant by extreme exhaustion was more severe. What did he argue as to how many attacks he had per month? With respect to the 30% rating?  At least two to three per month. With respect to the 50% rating? He was suffering from greater than three per month. So, I'm sorry. Oh, so the 30% for the prostrating attack, it was two to three per week. There's no further questions? Thank you. Thank you. I thank both counsel and the case is submitted.